*In re* NATALIE ANN RIDER, a Minor.—(The People of the State of Illinois, Petitioner-Appellee, *v.* Terrance E. Rider, Respondent-Appellant.)

Fourth District   No. 4—82—0577

Opinion filed April 11, 1983.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Respondent, Terrance E. Rider, appeals an order of the circuit court of McLean County entered August 9, 1982, pursuant to a juvenile proceeding concerning his minor daughter, Natalie. The order was entitled "Order of Protective Supervision." It (1) placed Natalie under supervision for a period of 36 months, (2) placed the respondent father and mother under "an Order of Protective Supervision" for a similar period of 36 months, (3) required the parents to cooperate with the court's juvenile officer, reporting all infractions of the order by the minor to that office, and (4) required the parents "to complete a drug and alcohol evaluation and treatment program and follow all recommendations of said program."

The proceeding was initiated on May 20, 1982, when a petition was filed in that court alleging that Natalie was a minor otherwise in need of supervision (Ill. Rev. Stat. 1981, ch. 37, par. 702—3). At an adjudicatory hearing on June 24, 1982, the minor, accompanied by her mother, appeared and admitted the allegations of the petition. The minor was then declared to be a minor otherwise in need of supervision and made a ward of the court. After a continuance, a hearing was convened on August 5, 1982, for entrance of a dispositional order and for hearing on a rule entered against Natalie to show cause in connection with alleged violations by her of an order of temporary supervision. In addition to the father's appearance at the dispositional hearing, he had only appeared on July 22, 1982, the date of the original setting for the dispositional hearing. He had been served previously only by publication.

The order appealed was entered as a part of the entry of the dispositional order and was apparently entered in aid of the rest of that order. The father maintains the order was erroneous as to him because: (1) He was not a custodial parent, and the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—1 et seq.) makes no provision for an order of protective custody against such a parent; and (2) the procedure used was improper.

Section 5—4 of the Juvenile Court Act states:

"If the order of disposition releases the minor to the custody of his parents, guardian or legal custodian, or continues him in such custody, *the court may place the person having custody* of the minor, except for representatives of private or public agencies or governmental departments, under supervision of the probation office. Rules or orders of court shall define the terms and conditions of protective supervision, which may be modified or terminated when the court finds that the best interests of

the minor and the public will be served thereby." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 37, par. 705—4.

The dispositional order, entered at the same time as the order on appeal, stated that Natalie was to remain with her mother during the period of supervision. Although the record is not clear, the evidence indicated that the father had some rights of visitation which were not intended to be terminated through the dispositional order. If the father had no rights of visitation, then clearly section 5—4 would not have authorized the court to order him to undergo the program provided for in the order on appeal. If he had such visitation rights, a close question is presented as to whether those rights amounted to custody within the meaning of section 5—4.

Section 1—12 of the Act provides:

" 'Legal custody' means the relationship created by an order of court which imposes on the custodian the responsibility of physical possession of a minor and the duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, except as these are limited by residual parental rights and responsibilities and the rights and responsibilities of the guardian of the person, if any." (Ill. Rev. Stat. 1981, ch. 37, par. 701—12.)

Section 1—16 of the Act defines residual parental rights:

" 'Residual parental rights and responsibilities' means those rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right to reasonable visitation, the right to consent to adoption, the right to determine the minor's religious affiliation, and the responsibility for his support." (Ill. Rev. Stat. 1981, ch. 37, par. 701—16.)

Nothing in the foregoing is inconsistent with a determination that a parent who has only a right of reasonable visitation has a sufficient vestige of custody to be subject to an order of protective supervision under section 5—4.

Section 607 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 607) speaks of a parent not "granted custody" having visitation rights under certain conditions, thus indicating that visitation is not a vestige of custody. On the other hand, section 3.02 of the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1981, ch. 40, par. 2103.02) speaks of a " '[c]ustody determination' " as a decision "providing for the custody of a child, including visitation rights" indicating that in the broad sense, visitation is an aspect of custody. In *People v. Harrison* (1980), 82 Ill. App. 3d 530,

532, 402 N.E.2d 822, 824, this court cited with approval *Delgado v. Fawcett* (Alaska 1973), 515 P.2d 710, where visitation was stated to be a form of custody.

The tenor of the Juvenile Court Act is to empower the court to subject to court supervision persons who have special relationships and responsibilities to minors who are themselves under court supervision. Section 5—5 of the Act (Ill. Rev. Stat. 1981, ch. 37, par. 705—5) provides for orders of protection, perhaps not as encompassing as those under section 5—4, against all persons before the court on original or supplemental petitions. Section 1—2(1) of the Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—2(1)) stresses the importance of preserving the minor's family ties. Section 1—2(4) (Ill. Rev. Stat. 1981, ch. 37, par. 701—2(4)) provides for the Act to be "liberally construed" to carry out the purposes as above.

■ In order to permit parents with problems damaging to the welfare of children, who also have problems, to retain as many of their parental rights as possible, it is often desirable to subject those parents to reasonable restrictions of supervision. The necessity of doing so is often less urgent when the parent has only rights of visitation, but it is still of considerable importance. We conclude that the legislature intended the phrase "the person having custody" to include parents who had rights of visitation subject to the general custody in the other parent. Such parents unwilling to abide by the requirements of supervision should be discharged from any such requirements upon formally giving up visitation rights.

We agree with the respondent that the procedure used to determine whether he should be placed under a supervisory order of protection was improper.

■ In the course of the dispositional hearing, the minor was unresponsive to questions posed by the trial court. The court then proceeded to examine the minor in chambers in the presence of only the minor, her guardian *ad litem,* her youth advocate, the assistant State's Attorney representing the petitioner, and a court reporter who transcribed the proceedings. Such a procedure was, under the circumstances, permissible in a dispositional proceeding. (*In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872.) However, during the course of this *in camera* proceeding, the court obtained most of the information it relied on in concluding that the father had a problem with excess consumption of intoxicants. No authority called to our attention supports the use of information obtained in this manner in support of issuance of an order requiring affirmative conduct of a parent not permitted to be present. Moreover, the unfairness to the fa-

ther was substantially compounded when the minor's advocate proceeded to narrate substantial unsworn testimony asserting that the father had a problem with alcohol. The policy reasons permitting the examination of the minor in the privacy of chambers do not extend to the reception of testimony of other properly sworn witnesses.

■ The petitioner maintains the father has waived any error in the proceedings by not making specific objection in the trial court. However, the remarks of the father, who appeared without counsel, made when the court informed him of the supervisory order, indicated that he objected to the procedure used. We hold that under the circumstances no waiver occurred.

■ Section 5—4 of the Juvenile Court Act makes no express requirement for notice to a party against whom an order of supervision may be entered. We recognize the legislative proscription that juvenile proceedings have a nonadversarial flavor (Ill. Rev. Stat. 1981, ch. 37, par. 701—20(1)). Nevertheless, at least where the order of supervision requires affirmative action of a nature not ordinarily expected of a parent (see *In re Burr* (1970), 119 Ill. App. 2d 134, 255 N.E.2d 57), fundamental fairness requires that such an order not be entered before the person to be subjected to the order has a reasonable opportunity to present evidence and be heard on the matter. Here, that opportunity was not afforded.

For the reason stated, the order of "Protective Supervision" appealed is reversed. The cause is remanded to the circuit court of McLean County. Such further proceedings for obtaining a similar order may be taken if in conformity to this opinion.

Reversed and remanded.

MILLS and MILLER, JJ., concur.